IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| **LONNIE BUTTS,** | |
| **Plaintiff,** | |
| VS. | CIVIL ACTION FILE NO. 1:07-CV-8 (WLS) |
| **Officers PARTAIN, OWENS, MASTERS, AKINS, BISHOP, MORRIS, and ABELLA,** | |
| **Defendants.** | |

**ORDER and RECOMMENDATION**

This is a § 1983 action brought by a State of Georgia inmate who is proceeding *pro se* and *in forma pauperis*. The events giving rise to the filing of this action allegedly occurred while plaintiff was detained in the Crisp County Jail also known as the Crisp County Detention Center ("CCDC"), and ultimately led to his conviction in the Superior Court of Crisp County on four counts of Obstruction of an Officer - Misdemeanor and one count of Riot in a Penal Institution which are relevant to this recommendation. (Doc. # 21-4). All of the named defendants were employed in some capacity at the Crisp County Jail.

Although plaintiff does not elaborate on which defendant did what to him he evidently maintains that all seven of them beat him on the dates of April 28, 2006, August 10, 2006 and September 25, 2006, as a result of which he allegedly sustained a fractured finger, wrist, lower back, neck and shoulder. He also maintains that his medication which he supposedly needs to control a mental or emotional illness was intentionally withheld from him for several months. (Complaint, Doc. # 1, Supplemental Complaints, Docs. # 10 - 11). Presently pending herein are four motions, all of which will be addressed in this Order and Recommendation.

Defendants' motion for summary judgment accompanied by supporting documents was filed on November 26, 2007, with the attached certificate of service showing service on the plaintiff at Valdosta State Prison (Doc. # 21). On November 28, 2007, the undersigned gave plaintiff the required notice of the filing of the motion by the defendants (Doc. # 22). On December 7, 2007, plaintiff filed what may be loosely referred to a rambling unverified response to the defendants' motion (Doc # 24). In this document he requests that the motion for summary judgment be denied due to the f act that he was beaten and denied his mental health medications. In this filing, plaintiff does not actually state or deny that he received a copy of the defendants' motion, he does, however, refer to the "letter received from your office on or about 12/5/07," which had to be the court's notice of the filing of the motion. Plaintiff's 'response' was not accompanied by the required certificate of service.

In spite of the above 'response', on December 14, 2007, plaintiff filed a motion for an extension of thirty days in which to respond to defendants' motion for summary judgment (Doc. # 26). Once again plaintiff does not state that he has not received a copy of defendants' motion.

On December 19, 2007, plaintiff filed a motion to compel defendants to provide him with a copy of their motion, alleging that he had not received a copy and therefore could not properly respond thereto (Doc. # 27). Defendants' counsel immediately re-served plaintiff with a copy of the motion that day, again at Valdosta State Prison. December 19, 2007, occurred on Wednesday, letting one reasonably conclude that if, in fact, plaintiff did not receive a copy of defendants' motion when originally filed on November 28, 2007, he would have in all likelihood received the second copy by Monday, December 24, 2007. The court's notice to the plaintiff of the filing of the original motion for summary judgment provided that his response to the motion

2

was due thirty days from the date he received the notice (and this notice is never sent until the motion has been filed). Therefore, if plaintiff did not receive a copy of defendants' motion when filed, the notice of the filing (Doc. # 22) served to give him at least thirty days from the date he received the second copy of the motion in which to respond. This in essence provided him until on or about the end of January 2008, in which to submit any additional responses to the motion. Almost six months have now lapsed and the plaintiff has filed no further response to defendants' motion although he has had more than ample time to do so. Plaintiff's motion for an extension of time and his motion to compel defendants' counsel to provide him with a copy of the motion for summary judgment are hereby **DENIED as MOOT.**

Defendants answered the complaint on or about July 26, 2007 (Doc. # 16), thus by virtue of the order entered by the court on May 24, 2007, establishing a 90 day discovery period commencing with the filing of an answer, the discovery period closed in this case in late October 2007. On February 28, 2008, some four months after the close of the discovery period, plaintiff filed a motion seeking criminal background checks on all defendants (Doc. # 29). Plaintiff has neither shown good cause for doing so nor has he sought to re-open the discovery period. For this reason plaintiff's motion for criminal background checks on the defendants is **DENIED.**

*Summary Judgment Standard*

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992)(citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence

of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991). Further, Federal Rule of Civil Procedure 56(e) in addressing the requirements necessary to withstand or defeat a motion for summary judgment provides in pertinent part:

> (2) Opposing Party's Obligation to Respond.
> When a motion for summary judgment is properly made and supported, an opposing party <u>may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.</u> (Emphasis added).

## *Local Rule 56*

For purposes of this recommendation the following portion of this rule is pertinent:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. <u>All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.</u> (Emphasis added).

A review of the record in this action reveals that plaintiff is at most relying upon nothing more than his pleadings in his feeble response to defendants' motion. Further, he has failed to submit his list of material facts as to which a genuine issue to be tried exists. Thus, Local Rule 56 requires that defendants' submission of material facts as to which there is no genuine issue to

4

be tried (Doc. # 21-2) be deemed admitted, if otherwise appropriate. Since the plaintiff is, at most, relying upon only his pleadings, Rule 56(e)(2) requires the entry of summary judgment, if appropriate

Defendants' statement of material facts is comprised of excerpts from the sworn affidavits of six of the seven defendants as well Tammy Middlebrooks, who was employed as a nurse at the Crisp County Detention Center at all times relevant to plaintiff's complaint (it does not appear that defendant Abella submitted an affidavvit). Nurse Middlebrooks is not a defendant herein. Defendants also rely upon a certified copy of plaintiff's criminal convictions in the Superior Court of Crisp County resulting from his misconduct on two of the three dates raised by the plaintiff. The evidence referred to in this paragraph is designated as exhibits A through G to defendants' brief or Documents 21-4 through 21-10 and 23-2.

Plaintiff appears to allege that he was badly beaten and seriously injured by all seven defendants on three separate dates, that he was also shot with a taser and sprayed with pepper spray. He alleges to have suffered a broken finger, fractured wrist, fractured lower back and neck and fractured shoulder.

Plaintiff alleges he was beaten on April 28, 2006, August 10, 2006 and September 25, 2006 (Complaint and supplement thereto). The evidence relied upon by the defendants in the form of sworn affidavits clearly shows that none of these defendants were involved in any use of force against plaintiff on September 25, 2006. As for the dates of April 28, 2006, and August 10, 2006, plaintiff was convicted by a jury on two counts of misdemeanor obstruction of officer as the result of his April conduct, and of one count of misdemeanor obstruction of officer and one count of riot in a penal institution a the result of the August incident (Doc. # 21-4, counts

3,4,6,7).

*Incident of April 28, 2006*

The uncontroverted evidence relied upon by the defendants shows the following to have happened on this date. Plaintiff assaulted defendant Owens by forcefully striking her in the forehead with his finger. This defendant however was not involved in any use of force against plaintiff on April 28, or August 10, 2006 (Owens Aff. ¶¶ 4-5). Defendant Owens reported plaintiff's assault, and defendant Partain, Jail Administrator, went to plaintiff's cell to move him to a security cell. Plaintiff was directed to pack his personal items as he was being moved, however he refused to do so. His belongings were then packed by an officer (Partain Aff. ¶¶ 2-3). Plaintiff, in the company of some of the defendants, exited his cell and started down the hall in a direction different than he had been instructed. Plaintiff was approximately 15 to 20 feet ahead of any correctional officer and was headed toward any area containing members of the general public. Plaintiff ignored all verbal commands to stop and was obviously trying to get away from the defendants. It appeared that the plaintiff would make to the public area of the jail before he could be stopped by the use of hands on force. (Partain Aff. ¶ 3, Akin Aff. ¶4, Masters Aff. ¶ 3). In order to stop the plaintiff before he reached the public area of the jail defendant Bishop determined that it was necessary to use a taser to stop the plaintiff, which he did. Once the taser was used on plaintiff defendants were able to get control over him and move him into another cell (Bishop Aff. ¶ 4). In addition to defendant Linda Owens, it also appears that defendant Tracy Morris was not involved in the April 28, 2006 incident.

Not only does the evidence not corroborate plaintiff's unsubstantiated claims of multiple fractured bones, "[t]here is nothing in Mr. Butts' medical records which indicate that he sought or

6

received treatment as a result of any incident on either April 28, 2006 or on September 25, 2006. In fact, there is no mention in any of Plaintiff's medical records of any incidents with jailers on April 28, 2006 or September 25, 2006." (Middlebrooks Aff. ¶ 3).

*Incident of August 10, 2006*

On this date the evidence shows that defendant Abella advised defendant Masters that he needed assistance with plaintiff who appeared to be smoking orange peels in his cell in violation of the rules. Plaintiff was instructed to leave his cell to which plaintiff responded that he was going "no damn where". Plaintiff then slammed the inside cell door causing it to jam. Defendants Abella and Masters then got the door open. Defendant Masters then instructed plaintiff to leave his personal property in the cell as it was going to be searched for cigarettes, whereupon plaintiff responded "fuck you" and drew his hand back as if to strike either defendant Masters or Abella. At this point defendant Masters sprayed plaintiff with O.C. (pepper) spray and he was then removed from the cell. As plaintiff was passing defendant Morris, he threatened to hit her in the mouth. (Masters Aff. ¶4).

Once outside of his cell plaintiff was advised that he was being placed in a padded cell and he began moving in the opposite direction away from the padded cell. He ignored the verbal commands that he turn around, come back and enter the padded cell. He was then grabbed by defendants Masters and Morris for placement into the padded cell. When this occurred plaintiff swung his fist and hit defendant Masters beneath his right eye. At that point defendants Abella and Morris forcibly placed plaintiff into the padded cell. Plaintiff was offered a wet towel for the O. C. Spray which he refused. (Masters Aff. ¶¶ 4-5, Morris Aff. ¶¶ 3-5). Apparently only defendants Abella, Masters and Morris were involved in this use of force incident.

7

After the above incident was concluded defendant Akin assisted in escorting plaintiff to Nurse Middlebrooks and back so that his finger could be examined. Before placing plaintiff back into the security cell defendant Akin patted the plaintiff down and found a shank concealed in the waist of his pants. The shank was a toothbrush sharpened to a point on one end. Plaintiff stated his intent to use the shank on one of the officers (Akin Aff. ¶ 6).

The evidence contained in this record regarding medical treatment/examination arising out of the August 10, 2006, incident is contained in paragraph 4 of Nurse Middlebrooks' affidavit which provides as follows:

> I did examine the plaintiff on August 10, 2006, after an incident with detention officers. Mr. Butts complained of neck pain and hand pain at that time. I observed that he was moving his neck and turning his head with no noticeable distress, and that he was moving his hands with no apparent difficulty. I did notice abrasions on a knuckle of this right hand, on his right wrist, and on his left wrist. There was no bleeding, and there was no sewelling that I noted on either his left wrist or right wrist. He had some abrasions but no serious injury.

The above medical evidence certainly belies plaintiff's unsubstantiated and uncorroborated allegations of bone fractures.

***Denial of Mental Health Treatment***

The only evidence contained within this record relative to mental health treatment is contained in the sworn affidavits of Nurse Middlebrooks and defendant Partain. Paragraphs 5 and 6 of the Middlebrooks affidavit state as follows:

> Mr. Butts" medical records indicate that he saw mental health professionals on at least the following three dates: October 17, 2005, December 9, 2005, and July 28, 2006. His records do not reflect that Mr. Butts requested to be seen by a mental health professional on

>     any other dates.
> 
>                                    6.
>     I have also reviewed Mr. Butts' medication record while he was
>     incarcerated in Crisp County. His medication record indicates that
>     he was receiving various prescription medications during his stay at
>     the Crisp County Jail, including the mental health medications
>     Seroquel and Effexor. Seroquel is used to treat schizophrenia, and
>     Effexor is an anti-depressant. His medication record indicates that
>     Mr. Butts received these two medications, along with several others,
>     on a regular basis throughout his stay at the Crisp County Jail.

Paragraph 8 of the Partain affidavit also states:

> Our transport log indicates that the plaintiff was transported to West
> Central Georgia Regional Hospital in Columbus on May 3, 2006, for
> a Court ordered mental health evaluation. Our records here at the
> CCDC also indicate that the plaintiff saw a mental health
> professional on October 17, 2005, December 9, 2005, and on July
> 28, 2006.

This evidence certainly shows that plaintiff's mental health needs were not ignored by the defendants, assuming that any of them had the responsibility to provide him with mental health treatment and medication. This evidence clearly shows, contrary to plaintiff's unsubstantiated allegations, that he regularly received medication for his mental health condition(s).

The above cited uncontroverted evidence in this case certainly appears to the undersigned to require the granting the defendants' motion for summary judgment and it is so **RECOMMENDED.**

Additionally, although plaintiff has alleged that he has filed grievances for each of the alleged incidents, the sworn testimony of defendant Partain shows that at no time while he was incarcerated at the Crisp County Detention Center did grieve any incident about which he complains in this action. Therefore, 42 U.S. C. § 1997e(a) of the Prison Litigation Reform Act would require that this complaint be dismissed for plaintiff's failure to exhaust his administrative

9

remedies before seeking relief in this court for conditions of confinement about which he complains.

Further, given the amount of force brought to bear upon the plaintiff and the all but non-existent injury sustained by him, as shown by the evidence contained in this record, it can be easily found that the, "force was applied in a good faith effort to maintain or restore discipline [as opposed to] maliciously and sadistically for the very purpose of causing harm" and was therefore not a violation of the Eighth Amendment's cruel and unusual punishment clause. Whitley v. Albers, 475 U.S. 312, 320; 106 S. Ct. 1078, 1085 (1986).

Therefore, for all of the reasons set out above it is the **RECOMMENDATION** of the undersigned that defendants' motion for summary judgment be **GRANTED.** Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO ORDERED RECOMMENDED,** this 19th day of June 2008.

*/s/ Richard L. Hodge*
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE